GRIFFIN, J.
 

 Petitioner, Orange County, seeks certio-rari review of a circuit court decision that reversed an Orange County Code Enforcement Special Magistrate [“Special Magistrate”]’s order finding Respondents, Peter A. Liggatt and Susanne Liggatt, in violation of the Orange County Code of Ordinances [“the Code”]. We grant the writ.
 

 The Liggatts own a residential property in Orlando, Florida. The code enforcement violation against them stems from their replacement of some pilings below a landing area of their dock located along a canal adjacent to the main portion of their property. The structure was originally constructed around 1975.
 

 On March 17, 2008, Liz Johnson, a supervisor with the Orange County Environmental Protection Division [“the Division”], sent the Liggatts a Notice of Violation [“NOV”] as follows: “On December 12, 2007, staff observed pilings had been replaced on portions of the access walkway of the dock located across the canal from the main property. After further investigation, no permit was found with the Division authorizing this activity.” The NOV informed the Lig-gatts that they had violated Section 15-346(c) of the Code [“the Ordinance”]. Ms. Johnson also sent the Liggatts a Proposed Consent Agreement setting forth the corrective actions necessary to bring their property into compliance and to resolve the enforcement case. It also informed the Liggatts they could appeal the decision to the Orange County Environmental Protection Commission [“EPC”].
 

 The Liggatts decided to appeal to the EPC. The EPC is a seven-member board of environmental specialists, consultants, engineers, architects and other citizens. The EPC held a hearing on May 28, 2008, and subsequently entered a recommendation against the Liggatts.
 

 With the matter still unresolved, Anna Fullen of the Division executed a Notice of Hearing for a proceeding before a Special Magistrate, pursuant to Chapter 162, Florida Statutes and Article II, Chapter 11 of the Code. The Notice alleged the Liggatts had violated Section 15-346(c) by making an “unauthorized repair on a ‘grandfathered’ dock structure,” and sought an “after-the-fact” permit for the dock repair and payment of the $1,999.00 administra
 
 *132
 
 tive fee. On August 4, 2008, the Special Magistrate held a hearing on the matter.
 

 The Liggatts’ position at the hearing was that the structure at issue was not a “dock” and that they had performed “maintenance,” not repair. They also contended that even if they had made a “repair” of a “dock,” because the pilings were out of the water, there was no violation.
 

 In urging that the structure was not a “dock,” the Liggatts contended the structure is a boardwalk to the water with a gazebo at the end and should instead be referred to as a “picnic deck.” They pointed out that the structure is “railed off’ with no gate and therefore is not designed for one to transfer to and from a boat. Nor is there a hoist for a boat. Mr. Liggatt offered as evidence a photograph depicting a boat in the water, positioned against the structure, with someone sitting in the boat and another sitting on the railing of the structure. Mr. Liggatt explained the picture:
 

 This is my boat which is a very large boat and my family trying to climb up onto this landing.
 

 [[Image here]]
 

 There is no way in my mind this has been designed as a terminal platform to allow boats to moor to it.
 

 On August 13, 2008, the Special Magistrate issued a decision finding the Liggatts in violation of Section 15 — 346(c) for unauthorized repair of a grandfathered dock. The Liggatts appealed the decision, and, on January 18, 2010, the circuit court reversed, concluding that there was no substantial competent evidence that the structure in question is a “dock” within the purview of the Code, and thus did not require a permit. Rather, it found that:
 

 The evidence shows that when the structure was built in 1975, it was not designed for or intended to be a dock and no permit was required. The structure consists of a long wooden walkway with side rails. The walkway extends from upland in the Appellant’s yard over a navigable canal and across wetlands to a wooden gazebo at the edge of a lake. There are two areas, referred to as picnic docks, which extend out from one side of thé walkway toward the lake. Appellant’s repair consisted of replacing two of the original pilings under one of the picnic docks. The water level at the replaced pilings varied with weather conditions, sometimes these pilings were out of the water and sometimes the water extended past the pilings into the wetlands. According to Appellant’s testimony, the work on the pilings was done in July and August of 2007 during which time the water was low and the pilings were out of the water. The Court notes that there are no gates or gaps anywhere in the side rails nor are there any steps, landings, or platforms where boat passengers could embark or disembark. Further, there is no evidence of customary structural features or equipment commonly associated with a dock for mooring boats. For example, there is no evidence of a boat lift, hoist, or roof over any part of the structure except the gazebo. No storage lockers, no water lines or hoses; no cleats for tying lines; no fenders; and no lines, chains, anchors, or other mooring gear lying about.
 

 The court also observed:
 

 The mere fact that a boat or other watercraft could pull alongside, assuming the water level was high enough at the time, and remain there while tied to a railing was not enough to bring the structure within the definition of a dock or mooring as
 
 we
 
 construe the Code provisions.
 

 [[Image here]]
 

 
 *133
 
 We read the somewhat ambiguous words “capable of use for vessel mooring” as used in the Code to mean keeping a boat in a designated place more permanently than just tying it up to something briefly and occasionally, which is all the evidence shows here.
 
 [1]
 

 (Emphasis added).
 

 The County’s petition presents the question whether the circuit court exceeded its review authority in rejecting the Special Magistrate’s decision that the structure at issue is a “dock,” subject to the County’s regulation.
 

 Under the Orange County Code of Ordinances, section 15-333, a “dock” is defined as:
 

 [A]ny permanently fixed or floating structure extending from the upland into the water,
 
 capable of use
 
 for vessel mooring and other water-dependent recreational activities. The term “dock”
 
 also includes
 
 any floating structure, boat lift or
 
 mooring piling,
 
 detached from the land,
 
 capable of use for mooring
 
 vessels and/or for other water-dependent recreational activities. The term “dock” also includes any area adjacent to the dock designated for mooring purposes. This term does not include any vessel that is not permanently docked, moored, or anchored.
 

 (Emphasis added). The circuit court appears to have accepted the Liggatts’ argument that the structure at issue is not a “dock” because it was not designed for mooring boats, but rather was designed to be a means of pedestrian access to and from the water, with seating. The circuit court found the definition of “dock” in section 15-333 to be ambiguous because it encompasses
 
 any
 
 structure extending from the upland and extending into the water that
 
 is capable
 
 of use for vessel mooring and other water-dependent recreational activities, even if it was not designed for such purpose or intended for such purpose or customarily used for such purpose. Orange County’s definition of a “dock” may be expansive, but it is not at all ambiguous. The record shows without dispute that the structure at issue extends from the upland into the water and is capable of use for vessel mooring and other water-dependent recreational activities.
 
 [2]
 
 The Liggatts’ contention that more than what is described in Orange County’s definition is required to make a structure a “dock,” as that word is commonly understood, has appeal, but cannot succeed. Rather than attempt to catalog all the various structures extending into the water that require regulation according to their various configurations and uses, the County can reasonably categorize them according to specific criteria, including their capacity to moor a boat. The structure at issue has the capacity to moor a boat and, therefore, is covered by the ordinance.
 

 Writ GRANTED; decision QUASHED.
 

 ORFINGER and EVANDER, JJ., concur.
 

 [1]
 

 . Citing
 
 City of Tampa v. Braxton,
 
 616 So.2d 554 (Fla. 2d DCA 1993), the court explained that "an ordinance which carries a penalty being in derogation of common law, such as the one in this case, must be construed strictly against Appellee and liberally in favor of Appellants, the party against whom the penalty is sought.”
 

 [2]
 

 . If, contrary to our reading of the briefs, this point is disputed, the Magistrate’s finding on this issue is supported by record evidence and entitled to deference.